**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PIERCE O'DONNELL,<br><br>        Plaintiff,<br><br>v.<br><br>THE BOUND BROOK BOARD OF EDUCATION, EDWARD SMITH, CHRISTINE LARSON, and DAVID LEPOIDEVIN,<br><br>        Defendants. | Civil Action No. 23-22821 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, United States District Judge**

**THIS MATTER** comes before the Court upon Defendants the Bound Brook Board of Education, Edward Smith, Christine Larson, and David Lepoidevin's Motion to Dismiss Plaintiff Pierce O'Donnell's *pro se* complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). (ECF No. 4.) Plaintiff opposed, and Defendants replied. (ECF Nos. 5 & 6.) The Court has carefully considered the submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motion is **DENIED**.

**I.    BACKGROUND**

This case involves constitutional and common-law claims stemming from Plaintiff's alleged wrongful termination in May 2022 from his position as a teacher's assistant.

Pierce O'Donnell, a resident of North Plainfield, New Jersey, sues the Bound Brook Board of Education, a public school district serving Bound Brook, New Jersey; Edward Smith, the

Principal of Bound Brook High School; Christine Larson, one of the Assistant Principals of Bound Brook High School; and David Lepoidevin, employed "in various capacities including Assistant and Head Football Coach" for the Bound Brook Board of Education. (ECF No. 1-2 at 2-3.[1])

Plaintiff alleges that he "worked periodically as a substitute teacher within the Bound Brook School District, from 2019-2021, outsourced from ESS Staffing Agency." (*Id.* at 3.) In 2021, Plaintiff "became a direct employee of the Bound Brook Board of Education, hired as a Teacher's Assistant, for the in[-]school suspension and disciplinary classroom." (*Id.*) Plaintiff was "working under . . . a collective negotiated labor agreement." (*Id.* at 6.) Plaintiff's "contractual agreement explicitly state[d] that district employees" would "receive routine performance evaluations and [be] disciplined according to the guidelines set out in the negotiated collective labor agreement." (*Id.* at 4.)

During Plaintiff's employment with the Bound Brook School District, "he never received any formal performance evaluation" nor "any formal disciplinary action under the negotiated labor contract." (*Id.*) In fact, Plaintiff "had a stellar employment history with the district." (*Id.*) Nevertheless, during a meeting in May 2022, Defendants Smith and Larson informed Plaintiff that "his contract as the teacher assistant to the disciplinary room was not going to be renewed for the 2022-2023 school year." (*Id.* at 5.) They cited Plaintiff for "a plethora of alleged performance deficiencies and disciplinary violations," which "were never recorded." (*Id.*)

Defendant Lepoidevin's "son was hired to fill . . . Plaintiff's position almost immediately after [Plaintiff] was . . . terminated." (*Id.* at 7.) The son "had recently graduated college and needed a job." (*Id.*) Lepoidevin was "wide[ly] acclaim[ed] for his role in regenerating and

---

[1] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

2

reviving Bound Brook's Football program," and Lepoidevin had a "professional as well as personal relationship, outside of work, with" Larson and Smith. (*Id.* at 6-7.)

Plaintiff asserts Count One for violation of due process under the Fourteenth Amendment to the United States Constitution and under the New Jersey Constitution; Count Two for breach of contract; Count Three for common-law wrongful termination under *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505 (N.J. 1980); and Count Four for tortious interference in contractual relations. (*Id.* at 4-7.) On December 1, 2023, Defendants removed the case to this Court from the Superior Court of New Jersey, Somerset County, based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (ECF No. 1 at 1-4.)

On December 21, 2023, Defendants moved to dismiss the complaint pursuant to Rule 12(b)(1). (ECF No. 4.) Plaintiff opposed on December 29, 2023, and Defendants replied on January 9, 2024. (ECF Nos. 5 & 6.)

## II.  LEGAL STANDARD

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. *See* Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted). A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing

3

facts." *Id.* The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### III. DISCUSSION

"Virtually every aspect of public education [in New Jersey] is governed by New Jersey's Education Law," which "establishes the administration and operation of New Jersey's public school system." *Jackus v. City of Elizabeth Bd. of Educ.*, 2011 WL 798469, at *3 (N.J. Super. Ct. App. Div. Mar. 9, 2011) (citing N.J. Stat. Ann. § 18A:1-1, *et seq.*). "The management and supervision of the local public school districts rests with boards of education" that "are given authority regarding the 'employment, regulation of conduct and discharge of [their] employees.'" *Id.* at *4 (quoting N.J. Stat. Ann. § 18A:11-1).

Under N.J. Stat. Ann. § 18A:6-9, New Jersey's Commissioner of Education has broad authority "to hear and determine, without cost to the parties, all controversies and disputes arising under the school laws." Indeed, New Jersey's Department of Education and the Commissioner have "subject matter interest" and the "first-instance jurisdiction . . . [over] 'all controversies and disputes arising under the school laws.'" *Archway Programs, Inc. v. Pemberton Twp. Bd. of Educ.*, 800 A.2d 237, 240 (N.J. Super. Ct. App. Div. 2002) (quoting N.J. Stat. Ann. § 18A:6-9). This "authority is plenary." *Id.* (citing *Abbott v. Burke*, 495 A.2d 376, 393 (N.J. 1985)). And "[i]t is well-settled that 'available and appropriate administrative remedies should be fully explored before judicial action is sanctioned.'" *J.G. on behalf of K.C. v. Hackettstown Pub. Sch. Dist.*, Civ. No. 18-2365, 2018 WL 3756952, at *3 (D.N.J. Aug. 8, 2018) (quoting *Abbott*, 495 A.2d at 391).

"[W]hen enforcement of a [legal] claim requires resolution of an issue within the special competence of an administrative agency," "a trial court should normally stay its hand, even while retaining jurisdiction where appropriate, out of deference for the primary subject matter

4

jurisdiction of the Commissioner and the Department, unless a reflective evaluation of the issues and their relationship to each other suggests that another sequence for resolving the pending questions would be more realistic." *Archway Programs, Inc.*, 800 A.2d at 240-41 (citation omitted). "Concomitantly, if resolution of the action at law is the key element to resolving the entire dispute, the administrative agency may defer its consideration until the lawsuit is resolved." *Id.* at 241.

"In general, disputes involving teachers are controversies under the school laws." *Jackus*, 2011 WL 798469, at *4. Nonetheless, "the sweep of the Department's interest and the Commissioner's jurisdiction does not extend to all matters involving boards of education." *Archway Programs, Inc.*, 800 A.2d at 240. The issues raised "must be cognizable within the expertise of the Commissioner." *Jackus*, 2011 WL 798469, at *4. If "the controversy does not arise under the school laws, it is outside the Commissioner's jurisdiction even though it may pertain to school personnel." *Bd. of Ed. of E. Brunswick Twp. v. Twp. Council of E. Brunswick Twp.*, 223 A.2d 481, 485 (N.J. 1966).

Applying the above principles, courts have found jurisdiction over "contract claims against boards [that] do not arise under the school laws but rather from statutory or common law . . . [and] are, therefore, typically and appropriately adjudicated in the courts." *Archway Programs, Inc.*, 800 A.2d at 240; *see also Picogna v. Bd. of Educ. of Twp. of Cherry Hill, Camden Cnty.*, 592 A.2d 570, 571 (N.J. Super. Ct. App. Div. 1991) ("The contract claim of a nontenured school employee does not arise under the school laws simply because its outcome may later enable him to attain tenure under the school laws. . . . Whether petitioner's employment was wrongfully terminated under the [three-year] contract and under the CEP Act is for the court, not the Commissioner, to decide."); *S. Orange-Maplewood Ed. Ass'n v. Bd. of Ed. of Sch. Dist. of S. Orange & Maplewood*, 370 A.2d 47, 50 (N.J. Super. Ct. App. Div. 1977) (holding that court had jurisdiction over teacher's

5

contract claim related to sabbatical leave for qualifying teachers because it stemmed from the terms of an agreement, and the dispute "concern[ed] the interpretation of that agreement" and did not "involve[] an interpretation of any specific statute in Title 18A (Education)").

Courts have also found jurisdiction over claims arising under the federal and state constitutions or under federal and state statutes. *See, e.g.*, *Hochman v. Bd. of Ed. of City of Newark*, 534 F.2d 1094, 1095 (3d Cir. 1976) (holding that nontenured teacher did not need to "exhaust his administrative remedies prior to commencing an action in federal court under 42 U.S.C. §§ 1983, 1985 where among other claims, he allege[d] violation of his First Amendment rights"); *Hecht v. E. Brunswick Bd. of Educ.*, Civ. No. 18-06039, 2019 WL 293234, at *4 (D.N.J. Jan. 23, 2019) ("Courts have held that Section 1983 claims fall outside the Commissioner's jurisdiction." (collecting cases)); *Goode v. Camden City Sch. Dist.*, Civ. No. 16-3936, 2017 WL 2265146, at *3 (D.N.J. May 24, 2017) (holding that tenured teachers could "assert[] claims [for age discrimination] under a federal statute, the U.S. Constitution, state laws, and the state constitution" because "[a]lthough the allegations pertain[ed] to [the] [p]laintiffs' employment with a public school, they do not arise under school laws" where "the pleadings d[id] not invoke school law provisions anywhere therein"); *Knox v. Union Twp. Bd. of Educ.*, Civ. No. 13-5875, 2015 WL 769930, at *8 (D.N.J. Feb. 23, 2015) ("Knox challenges the Board's treatment of her, as well as its policies and practices, under the Free Speech Clause, Free Exercise Clause, Establishment Clause, Equal Protection Clause, and New Jersey's Free Exercise and Enjoyment of Religion Clauses. Those are not school law claims, but rather state and federal constitutional claims. As such, they are not committed to the Commissioner's jurisdiction and do not invoke any specialized administrative expertise."); *Galbraith v. Lenape Reg'l High Sch. Dist.*, 964 F. Supp. 889, 895 (D.N.J. 1997) (finding that "[a]lthough Plaintiff's Title VII, NJLAD, and breach of contract claims

in her . . . complaint relate[d] to her public school employment, none of the[] claims 'ar[ose] under the school laws'" (quoting N.J. Stat. Ann. § 18A:6-9)).

In contrast, courts have found that they lack jurisdiction when a teacher claims that a board of education "violated 'school laws' by failing to renew her [or his] contract." *Sawires v. Elizabeth Bd. of Educ.*, 2024 WL 2809785, at *2 (N.J. Super. Ct. App. Div. June 3, 2024); *see also Lock v. Rockaway Twp. Pub. Sch.*, 2019 WL 5302850, at *3 (N.J. Super. Ct. App. Div. Oct. 21, 2019) (dismissing teacher's common-law claim for whistle blowing where she did not first exhaust administrative remedies, the "case did not present questions of law," and the "issue [was] within the jurisdiction of the Commissioner because at its core it [was] a dispute over the denial of [the teacher's increment"); *Bd. Of Educ. Of Twp. Of Middletown v. Witmer*, 2009 WL 2486640, at *12 (N.J. Super. Ct. App. Div. Aug. 17, 2009) ("The contractual issues involved are incidental to resolving the education claims that are the subject of this litigation.").

Ultimately, a close "examination of the causes of action asserted in [a] plaintiff's complaint is pivotal to determine the question of jurisdiction." *Jackus*, 2011 WL 798469, at *5.

Here, Defendants argue that all "Plaintiff's claims are based exclusively on decisions made by Defendants in their capacity as a board of education with respect to the non-renewal of Plaintiff's employment." (ECF No. 4-1 at 4.) Because "[s]uch matters arise under school law and fall squarely within the primary jurisdiction of the Commissioner of Education," Defendants argue that the claims must be dismissed "for lack of subject matter jurisdiction." (*Id.*) Further, "because Plaintiff . . . failed to present this matter before the Commissioner," Defendants argue that the complaint "must also be dismissed for failure to exhaust administrative remedies." (*Id.*)

In response, Plaintiff argues that his case "is not a simple contestation of the district's non-renewal of his contract which N.J.S.A. 18A:6-9 could remedy." (ECF No. 6 at 6.) Instead, "Plaintiff seeks relief from quasi-fraudulent conduct by board employees, acting beyond the scope

7

of their official capacity, to illegally deprive him of his employment for the purpose of procuring his position for a political crony's son." (*Id.*) Plaintiff emphasizes that he "never sought reinstatement which is the only remedy that the Commissioner can grant." (*Id.*) Plaintiff also argues that the letter notifying him that his employment had ended did not state that it was "a final board action or resolution" and did not "contain any reasoning or motivation that would have enabled . . . Plaintiff to utilize the [administrative] process." (*Id.* at 7.)

Having carefully considered the parties' arguments, the Court finds that the Department of Education does not have jurisdiction over Plaintiff's claims and, therefore, the claims are not subject to dismissal at this stage for failure to exhaust administrative remedies.[2]

Critically, Plaintiff does not rest his common-law claims on any provision in New Jersey's school laws. For his contract claim, Plaintiff alleges that "under the negotiated labor agreement between the district and the local education bargaining unit," he "was entitled to his performance review and to be notified of disciplinary actions at the time of their occurrence." (ECF No. 1-2 at 4-6.) Because Defendants allegedly did not provide Plaintiff with the contractually promised performance review or disciplinary notifications, he did not have "an opportunity to remediate his performance" prior to being discharged for "alleged performance deficiencies and disciplinary violations." (*Id.* at 5-6.) Plaintiff's wrongful termination claim under *Pierce* rests on the same allegations that Defendants' failure to follow the "requisite procedures" delineated in the "collective negotiated labor agreement" violated the common law and constituted wrongful termination. (*Id.* at 6.) And for tortious interference, Plaintiff alleges that Defendants Larson and Smith conspired to manufacture reasons to end Plaintiff's employment with the Bound Brook

---

[2]   Defendants did not move under Rule 12(b)(6) for failure to state a claim, so the Court does not make any findings as to the plausibility of Plaintiff's claims.

School District so that Defendant Lepoidevin's son could replace Plaintiff. (*Id.* at 6-7.) Plaintiff seeks, among other things, monetary and punitive damages from Defendants. (*Id.* at 7-8.)

Notwithstanding that Plaintiff does not cite the school laws nor rely on the school laws as the basis for his common-law claims, Defendants still argue that the Department of Education has jurisdiction, citing several provisions in title 18 of New Jersey's Education Law. Defendants argue that non-renewals of nontenured teaching staff are governed by N.J. Stat. Ann. § 18A-27-10 and N.J. Stat. Ann. § 18A-27-4.1, which provides that a nontenured "employee whose employment contract is not renewed shall have the right to a written statement of reasons for nonrenewal . . . and to an informal appearance before the board." Defendants also argue that periodic evaluations of nontenured teaching staff are governed by N.J. Stat. Ann. § 18A-27-3.1, which provides that every board of education in New Jersey "shall cause each nontenure teaching staff member employed by it to be observed and evaluated in the performance of her or his duties at least three times during each school year but not less than once during each semester."

While these statutory provisions relate to the general subject matter of Plaintiff's complaint, he does not seek reinstatement in this case and bases his claims on Defendants' alleged breaches of and tortious interference with the negotiated labor agreement, not on violations of the statutes.[3] Plaintiff's claims therefore do not arise from New Jersey's school laws and do not confer jurisdiction on the Department. *See Rivera v. Elizabeth Bd. of Educ.*, 2011 WL 1135232, at *4 (N.J. Super. Ct. App. Div. Mar. 30, 2011) ("[T]he language in N.J.S.A. 18A:6–9, which confers

---

[3] Defendants emphasize that in paragraph 37 of the complaint, Plaintiff alleges that "Defendant Lepoidevin's son was . . . hired by the district, in obfuscation of the Request for Qualifications process delineated by both New Jersey Law and the Board of Education's policies." (ECF No. 1-2 at 7.) Defendants argue that this indicates that Plaintiff's claims arise under the school laws. But this sole allegation concerns a different employee and does not give rise to any of Plaintiff's claims. Whether or not Lepoidevin's son was hired via a proper process under the school laws does not alter the basis for Plaintiff's suit.

jurisdiction on DOE over 'all controversies and disputes arising under the school laws,' makes it clear that unless the dispute in question 'involves an interpretation of [a] specific statute in Title 18A (Education),' deferring to DOE's primary jurisdiction should be avoided.").

Indeed, New Jersey's Appellate Division held in *South Orange-Maplewood Education Association v. Board of Education of the School District of South Orange and Maplewood* that the plaintiff could sue in court for specific enforcement of provisions of an agreement relating to sabbatical leave for qualifying teachers, even though the board of education argued that the dispute "involve[d] a number of school laws, including the mandate in the Education Clause of our Constitution (N.J. Const. (1947), Art. VIII, § 4, par. 1) for a thorough and efficient system of education, the management of local schools by school boards (N.J.S.A. 18A:10-1), the employment and regulation of employees (N.J.S.A. 18A:11-1), the power to fix and alter their compensation (N.J.S.A. 18A:16-1) and the power to make rules governing terms of employment (N.J.S.A. 18A:27-4 and N.J.S.A. 18A:28-5)." 370 A.2d at 49. The Appellate Division saw "nothing in the dispute over the meaning of the agreement as it pertains to sabbatical leave which involve[d] an interpretation of any specific statute in Title 18A (Education)." *Id.* at 50.

Similarly, in *Picogna v. Board of Education of the Township of Cherry Hill*, the Appellate Division held that a nontenured employee could sue for breach of his employment contract, even though the board of education argued that the dispute arose "under the school laws because if it had wrongly terminated petitioner's employment it thereby prevented him from attaining tenure under the school laws." 592 A.2d at 571. The Appellate Division wrote that the contract claim did "not arise under the school laws simply because its outcome may later enable [the plaintiff] to attain tenure under the school laws," and it concluded that whether the plaintiff's "employment was wrongfully terminated under the contract and under the CEP Act [was] for the court, not the Commissioner, to decide." *Id.*

Here, too, the legal issues as to whether Defendants breached the agreement that Plaintiff sues under and whether Defendants tortiously interfered with Plaintiff's contractual relations do not arise under New Jersey school laws. Plaintiff does not seek reinstatement for nonrenewal nor does he challenge his nonrenewal under the school laws. Plaintiff claims he has separate enforceable contractual rights that were breached. To adjudicate the claim, the Court would consider and interpret the terms of the applicable agreement, without reference to Title 18 of the school laws. And unlike in *Archway Programs, Incorporated v. Pemberton Township Board of Education*, the parties have identified no pending administrative proceeding involving a "larger controversy" that would resolve issues bearing on the present suit and would warrant staying this case. 800 A.2d at 244 ("[O]ut of respect for the subject matter interest of a coordinate branch of government and to promote consistency of result, the trial court should stay its hand regarding all interrelated issues of law between the parties until the Commissioner and the Department have resolved all those questions that are within their subject matter purview and amenable to disposition by administrative order or directive.").

Finally, Plaintiff's due process claim under the United States Constitution and New Jersey Constitution "are not school law claims, but rather state and federal constitutional claims. As such, they are not committed to the Commissioner's jurisdiction and do not invoke any specialized administrative expertise."[4] *Knox*, 2015 WL 769930, at *8; *see also Hochman*, 534 F.2d at 1095; *Goode*, 2017 WL 2265146, at *3.

---

[4] Federal constitutional claims are typically asserted by private citizens against state actors via section 1983, which Plaintiff does not reference in his complaint. Nevertheless, based on Plaintiff's *pro se* status, the Court will read the pleading as invoking section 1983. *See Campbell v. Conroy*, 55 F. Supp. 3d 750, 757 (W.D. Pa. 2014) ("Although the complaint does not specifically refer to 42 U.S.C. § 1983, the court construes the complaint as asserting claims under that statute.").

In their reply brief, Defendants argue for the first time that Plaintiff's due process claim fails on its merits because Plaintiff did not "identify a property interest subject to Fourteenth Amendment protection." (ECF No. 5 at 7.) Defendants write that "[a]s a non-tenured teacher, the source of Plaintiff's claim to entitlement, if any, is the employment contract," and "an at-will employment contract does not create a protected property interest in one's job." (*Id.* at 8.) Because this argument was raised on reply and Plaintiff did not have an opportunity to directly address it, the Court will not consider it at this time. *See Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 869 F. Supp. 278, 281 n.1 (D.N.J. 1994) ("This Court will not usually consider arguments raised for the first time in a reply brief . . . ."). Defendants may renew their merits-based challenge to the due process claim at a later point.

IV.   **CONCLUSION**

For the reasons set forth above, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 4) is **DENIED**. An appropriate Order follows.

Dated: July 30, 2024

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**